Nicholas M. Pette, J.,
Plaintiff moves for an order requiring defendant and all other persons indicated in his moving affidavit to produce for discovery and inspection, pursuant to section 324 of the Civil Practice Act: (1) all of the defendant’s books, records, memoranda or writings, United States and New York State income tax returns for the years 1957 and 1958, all financial records, including bank statements and records and all other writings and papers kept by him or in his custody or control as relate to the matters in controversy in this action and to the dealings and transactions between the plaintiff and defendant, and as between the defendant and the eoplaintiffs of the plaintiff herein in an action entitled “ Cunningham v. English (United States District Court for the District of Columbia, Civil Action No. 2361-1957),” (2) all records, writings, papers, books, bank statements, cancelled checks and deposit slips in the custody or control of the defendant as they relate to moneys received by the defendant from or through the aid of some 35 named parties in plaintiff’s notice of motion herein (not parties to this action nor served with notice of this motion), (3) checks and drafts from Kansas City, Mo., New Haven, Conn., Philadelphia, Pa., and Scranton, Pa. and (4) all other persons and companies who contributed moneys to the defendant in relation to the cause of the Federal court action, aforesaid.
The moving papers and the papers in opposition to this motion, together with the exhibits annexed thereto, are lengthy. To understand and make clear the basic issues involved herein, it has been necessary to consider some of the background of this action and to refer to the same, emphasizing the factors which may suggest the real motive behind this action and the instant motion.
This action is ostensibly one for an accounting. The origin of this case is traceable to the origin of Civil Action No. 2361-1957, instituted by 13 individuals, representing various Local Teamsters Unions affiliated with the parent International *328 Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, who constituted the Banlc and File Committee of said Local Unions, against the Officers and the General Executive Board of the parent International Union and said International Union, in the United States District Court for the District of Columbia. The plaintiff Cunningham was the Chairman of said Bank and File Committee.
The defendant’s law firm, Dodd, Kaplan & Schmidt, was retained by said plaintiffs, constituting said Bank and File Committee, to institute suit, as aforesaid, to restrain the defendants in said action from holding a convention, scheduled for October, 1957, in Miami Beach, Florida, for the purpose of electing Officers of said International Organization, the delegates to the convention having allegedly been appointed or selected in violation of the constitution of the International Organization.
That action was also instituted to restore to the membership at large those rights and privileges (allegedly long since denied) guaranteed by the International Organization’s constitution.
The complaint in the United States District Court in Washington, D. C. contained 75 paragraphs, alleged a class action and charged countless acts of misfeasance, nonfeasance, and malfeasance on the part of the president and the other officers and members of the General Executive Board of the International Organization. Upon that complaint, the defendant, as counsel for his law firm, representing more than one million and a half teamsters, proceeded to trial before the Honorable F. Dickinson Letts, then a United States District Court Judge and now Chief Judge of said court in the District of Columbia. After 22 days of trial during which oral testimony was heard and documentary evidence received, the parties obviated the need for further litigation by agreeing upon a consent order executed and filed on January 31, 1958, a copy of which is annexed to the opposing papers on the instant motion. The consent order set up a board of three monitors who were empowered with certain authority therein set forth.
Needless to say, preparation of the case for trial required a tremendous amout of investigation and research into the law and the evidentiary facts necessary to sustain the charges of the complaint, which encompassed almost every conceivable act of intra-union wrongdoing.
It is significant that at that time plaintiff Cunningham was an avid and wholehearted supporter of the consent order which he had ratified orally and in writing, and sought to avail himself of its benefits, at least until July 1, 1958, Cunningham was the first of all the Bank and File Committee members to sign the *329 nominating petition urging the District Court to appoint the defendant one of the monitors to serve under the consent order.
By the terms of said consent order the monitors (as was since confirmed in a decision of said United States District Court handed down December 11,1958) were not intended to be powerless, but a board vested with authority to see that the recommendations made by them and intended to correct abuses or eliminate evils were enforced by the District Court upon the basis of Monitor Application indicating that the defendants were arbitrarily failing to comply with the monitoral recommendations.
Cunningham is presently attempting to remove defendant as a monitor in proceedings in the United States District Court, charging him with failing to account for moneys allegedly contributed to the rank and file and diverting the same to his own pocket in the sum of $18,500. Cunningham’s motion to that end was heard before Judge Letts, and after Cunningham and his witnesses offered their proof, the court denied the petition to remove defendant and in effect ruled that defendant need not have to account. The court’s order denying the Cunningham application “ in all respects ” was signed and filed.
Defendant asserts that Cunningham, after abortively instituting an action similar to the one at bar in the District Court of Washington, D. C., instituted the present action against the defendant on October 29, 1958, in which defendant interposed a general denial and a separate defense of res judicata. After issue was joined in this action, Cunningham moved in the United States District Court for leave to file a new petition to suspend defendant as a monitor and to direct him to account for the very same funds allegedly involved in the case at bar. The motion was heard before Judge Letts (who had denied the earlier motion made by Cunningham). The affidavit on that motion contained the same charges involving precisely the same funds that are the subject of contention in the case before this court. The United States District Court, on December 23, 1958, denied the motion to direct defendant to account and to suspend him as monitor. A notice of appeal from the order denying said motion was filed by Cunningham on December 29, 1958; the appeal is now pending.
Up to this point, the defendant points out, Cunningham has taken the following steps: (a) moved in the United States District Court to remove defendant as a monitor for failing to account, (b) started an action for an accounting in Washington, D. C., (c) started an action in this court for an accounting, (d) moved to suspend defendant as a monitor and to direct him *330 to account in the same United States District Court, (e) appealed the order of the court denying Ms motion to suspend defendant as monitor and to direct him to account, (f) filed objections to defendant’s application for counsel fees in the United States District Court after the consent order was signed, (g) collaborated with Hoff a’s counsel when they, using Cunningham’s identical charges, sought defendant’s removal; seven of the eight charges were withdrawn and the court dismissed the eighth.
It appears that the fees of defendant and his law firm for the services rendered in the aforesaid United States District Court action are to be fixed and allowed by the court in that action; that the defendant has received nothing as yet to compensate him and his law firm for their services therein.
It further appears that during the period from the institution of the aforesaid action (Sept. 19, 1957) to the entry of the consent order therein (Jan. 31, 1958), nationwide interest was created due to the publicity the said Federal court case and the McClellan Committee received in the press, on the radio, and on television. As defendant points out, it also appears that it was common knowledge that the International Organization’s treasury had unlimited resources to finance the court proceedings ; that in marked contrast, the Rank and File Committee-members, who had no such resources, appealed to the public for financial help, and that the intrepidity and pluck of the rank and file fired the imagination of the public and created a climate of sympathy. Contributions were received — some few at defendant’s office — but mostly at the office of the Rank and File Committee at 50 East 47th Street, New York City. It also appears that whatever moneys were received at defendant’s office from public or other contributors were turned over to the Rank and File Committee, and that defendant kept none. This is substantiated by the joint affidavit of all 12 members of the Rank and File Committee, which is annexed to defendant’s opposing papers on the instant motion, in which said members attest to the fact that defendant fully accounted for any contributions he had received for the rank and file.
That defendant had to neglect a considerable part of Ms regular law practice in order to safeguard the interests of the plaintiffs and the class they represented in the aforesaid Federal suit is undisputed. Defendant states that, as a consequence, his regular income from his practice was almost completely cut off, and to carry on Ms crusade, he was compelled to borrow money from friends and others to run Ms office and to maintain his home. The money thus borrowed, defendant contends, was Ms money which he used for paying expenses of the litigation, *331 running Ms office and home wMle he was prosecuting the Federal court litigation. Defendant contends that it is this personal money that the plaintiff Cunningham asks him to account for, although he has no right to do so since he has deserted the other 12 members of the rank and file and is no longer in sympathy with their cause. Defendant contends that these 12 members and not Cunningham are the plaintiffs and the domini litis in the Federal court action.
It is significant that the other 12 members of the Rank and File Committee, as shown in their aforesaid joint affidavit, are fully satisfied that the moneys borrowed by the defendant, as aforesaid, were his funds and not funds of the rank and file; also significant is the fact that they are the rea.1 parties in interest in the action at bar and not Cunningham.
In the opinion of this court the within action, as appears from the record, is groundless and that the pending motion for discovery and inspection is also without merit and not made in good faith.
Cunningham, it appears, during the preparatory stages and wMle the United States District Court case was on trial, acted not only as chairman of the Rank and File Committee, but also as an investigator (along with plaintiff’s chief investigator, Pat Kennedy). In that capacity, he travelled to the West Coast interviewing witnesses and checking information. His expenses were paid out of funds of the Rank and File Committee treasury.
When the need for such services were rendered.unnecessary due to interlocutory settlement embodied in the consent order aforesaid, the rank and file looked to Cunningham to account for the disbursement of moneys which he claimed to have made from the committee’s treasury as expenses incurred in his investigation. He failed to render a satisfactory accounting of these moneys, and as a consequence and for that reason alone, the remaining 12 members, acting unanimously, removed him as chairman on February 20, 1958, and elected Andrew Boggia in his place. It also appears that about this time defendant, as attorney for plaintiffs in the aforesaid Federal action, disapproved a claim of $5,750 for alleged loss of pension and welfare benefits which Cunningham submitted as a legitimate item of expense under section 14 of the Consent Order, and when Cunningham subsequently submitted that claim to the United States District Court, Judge Letts also ruled against its allowance.
It is the defendant’s contention on the instant motion that the aforesaid two major setbacks preceded Cunningham’s sudden spiteful desertion of the cause of the rank and file, and that *332 shortly therefter he embarked upon a campaign of perjury, abuse and vilification aimed particularly at defendant, and that that campaign has had no let up even to the present day. Defendant asserts that Cunningham’s about face was first brought to light on March 24, 1958, when defendant received a telephone call from one Len Golos, who, speaking for Cunningham, warned defendant to resign as a monitor at once, and that if defendant refused, Cunningham, through Golos, threatened to call a press conference and accuse him publicly of diverting Rank and File Committee money to his own use.
Defendant asserts that he has received not one penny for his legal services, and that only part of his out-of-pocket expenses were paid with Cunningham’s approval from funds received by the rank and file, which amounted to $7,205.27 for which defendant submitted a full accounting (approved by all the plaintiffs) in an affidavit filed by defendant in the United States District Court on April 25, 1958. With rent to pay, two and sometimes three secretaries, two attorneys and other expenses of an active law office, defendant states that this court can appreciate how far $7,205.27 will go to meet those expenses, and that it is clearly self-evident why he had to borrow money from friends and clients to keep an office going and support himself and family.
The defendant urges in his opposing affidavit that James R. Hoffa, as Provisional President of the International Teamsters organization, is the real party behind this action and the instant motion; that Hoffa soon made it clear that he had no idea that his dictatorial and domineering control of the Teamsters would be seriously questioned, consent order or no consent order. Defendant urges that from the very beginning Hoffa refused to accept and follow the implications of the consent order and later the recommendations of a majority of the Board of Monitors; that, instead of co-operating to accomplish what the consent order had envisioned, namely, the restoration to the rank and file of democratic processes in the Teamsters, Hoffa has thrown every conceivable kind of impediment in the way; that his obstructive tactics are aimed especially at the defendant for he knows that defendant is chiefly responsible for the court action which deprived him of de jure office and for the litigation that at long last has, at least temporarily, unloosened his stranglehold on the throat of a considerable segment of American labor.
Defendant asserts that it is the over-all strategy, with unlimited financial resources at his disposal, for Hoffa to hire counsel and to finance the costs of expensive litigation, to *333 harass defendant and the monitors with actions, appeals and motions, and possibly to so discourage defendant that defendant may throw up his hands in utter disgust and abandon his avowed determination to realize the objectives that prompted him in taking the original action against the Teamsters and Hoffa.
This court is of the opinion that the clomini litis, who would be entitled to bring this action and make the instant motion, are the 12 members of the Rank and File Committee and not the plaintiff, who it appears has deserted said committee and is no longer in sympathy with their cause. Furthermore, it is significant that all 12 members of said committee have joined in the affidavit submitted in opposition to plaintiff’s motion wherein they exonerate defendant of the charges of withholding and diverting funds contributed to said committee and castigate the plaintiff for his present action and motion against the defendant.
In an action for an accounting only, the court will deny discovery and inspection until the right to the accounting has first been established. {Wertheim v. Grombecher, 229 App. Div. 16.) Plaintiff’s causes of action must be established before he can have inspection of the defendant’s books, records, documents, etc. {Fierman v. Samuel Rosenblum, Inc., 67 N. Y. S. 2d 887.) This court is satisfied that the plaintiff has failed to establish that there is any merit to his alleged causes of action.
A “ roving commission to inspect all of the defendant’s books and records, including those which do not relate to the merits of the action is not authorized.” {Haffenberg v. Wending, 271 App. Div. 1057.) In any case, however, discovery is granted “ only in the exercise of a sound discretion in the ascertainment of truth and the advancement of justice but it must appear that the evidence is competent, relevant and material to the issues, unknown to the party seeking it and in the possession of the adverse party.” {Murphy v. Keenan, 101 Misc. 443, 446, affd. 183 App. Div. 923; Bencoe v. McDonnell, 210 App. Div. 123.) The plaintiff has failed to show that the books, records, etc., which he wants the defendant to produce, are competent, relevant and material to the issues herein and admissible- as evidence upon the trial. {Milberg v. Lehrich, 2 A D 2d 860; Hay v. Republic Trading Co., 184 App. Div. 537, 538.)
A discovery and inspection is limited to books, documents or other papers relating to the merits of the action. {Paliotto v. Hertman, 2 A D 2d 866.) They must be evidence themselves, not merely useful in supplying a clue whereby evidence can be gathered. {People ex rel. Lemon v. Supreme Court, 245 N. Y. 24, 28-29.)
*334 A party to an action is not entitled to a discovery of records in the custody of a third person not a party and not in the control of such a party. (Beasley v. Huntly Estates At Ardsley, 137 N. Y. S. 2d 784, affd. 285 App. Div. 887.)
There is no authority for the discovery of records of a person or corporation not a party to the action. (Rubel Corp. v. Rosoff, 251 App. Div. 868.) Nor is discovery and inspection permitted to enable a party to check on the credibility of the other party (Dienstag v. Athenson & Passin, 60 N. Y. S. 2d 794, affd. 270 App. Div. 927), or merely because the documents will be useful in supplying a clue whereby evidence may be gathered. (Popper v. American Ice Co., 73 N. Y. S. 2d 415; Howe v. McBride, 193 Misc. 271.)
The application for the production of books, records, etc., for discovery and inspection, must particularize the books, records and documents upon which discovery and inspection is desired, pursuant to section 324 of the Civil Practice Act (Byrnes v. S. S. Stafford, Inc., 71 N. Y. S. 2d 584).
Upon all the papers, the court is satisfied that there is no merit to this motion and that the plaintiff has failed to demonstrate any facts from which this court can determine that this motion has been made by the plaintiff in good faith.
Accordingly the plaintiff’s motion is in all respects denied.
Submit order.